UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

APEX ENERGY GROUP, LLC, *et al.*,                    Case No. 1:12cv466

        Plaintiffs,                                        Judge Michael R. Barrett

    v.

APEX ENERGY SOLUTIONS OF
CINCINNATI, LLC,  *et al.*,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' and Third Party Defendants' (collectively "Plaintiffs") Motion to Dismiss Defendants' Supplemental Claims. (Doc. 83). Defendants/Counterclaimants/Third-Party Plaintiffs (collectively "Defendants") have filed a memorandum in opposition (Doc. 88) and Plaintiffs have filed a reply (Doc. 89). The motion is now ripe for review.

## I.    PROCEDURAL BACKGROUND

As the factual background of this case has been set forth in prior Opinions and Orders of this Court, it will not be repeated again here. Instead, the Court will focus on the most recent procedural history upon which the issues currently before the Court are based.

On November 30, 2012, this Court granted Defendants leave to file their First Supplemental Counterclaims and their Second Supplemental Counterclaims. (Doc. 75). Those supplemental counterclaims consist of the following:

- Count One of the First Supplemental Counterclaims:  Breach of contract by Plaintiffs with respect to the Oklahoma City market for failure to engage a

national auditing firm within 30 days of Defendants' June 13, 2012 challenge notice as required by the Reorganization Agreement. (Doc. 30, ¶¶ 19-22).

- <u>Count Two of the First Supplemental Counterclaims</u>: Declaratory judgment that Plaintiffs materially breached the Reorganization Agreement by failing to engage a national auditing firm as required by the Reorganization Agreement, that the Oklahoma City market is now a "Market to be Developed" as that term is defined in the Reorganization Agreement, and that some or all of the ten Challenged Markets were "abandoned" by Plaintiffs and are now markets to be developed. (Doc. 30, ¶¶ 23-26).

- <u>Count Three of the First Supplemental Counterclaims</u>: Breach of contract by Plaintiffs with respect to the terms of a purported settlement agreement reached in this lawsuit. (Doc. 30, ¶¶ 27-29).

- <u>Count One of the Second Supplemental Counterclaims</u>: Breach of contract by Plaintiffs for purportedly failing to send a "4 Month Notice" as required by the Reorganization Agreement for the Cleveland, Houston, Atlanta and Phoenix markets. (Doc. 44, ¶¶ 18-22).

- <u>Count Two of the Second Supplemental Counterclaims</u>: Declaratory judgment that Plaintiffs materially breached the Agreement by failing to send the requisite 4 Month Notices for the Cleveland, Houston, Atlanta and Phoenix markets and that Defendants are entitled to develop in those markets as set forth in the Reorganization Agreement. (Doc. 44, ¶¶ 23-28).

- <u>Count Three of the Second Supplemental Counterclaims</u>: Unjust enrichment based on Plaintiffs continuing to do business in the Cleveland, Houston, Atlanta and Phoenix markets despite their purported breaches of the Reorganization Agreement. (Doc. 44, ¶¶ 29-33).

Plaintiffs now have moved to dismiss those supplemental counterclaims for failure to state a claim upon which relief can be granted. (Doc. 83).

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss, this Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v.*

*Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

"[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, *passim* (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While the Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint need not contain detailed factual allegations, yet it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A pleading that offers labels and conclusions or merely a formulaic recitation of legal elements will not do. *Id.* Nor does a complaint suffice if it tenders naked assertions devoid of factual enhancement. *Id.* While a plaintiff need not plead specific facts, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 555).

3

A court may consider the following when ruling on a motion to dismiss: "(1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice."  *Smith v. Bd. of Trs. Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 889 (N.D. Ohio 2010) (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 924–25 (N.D. Ohio 2009)); *see also Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").

## III.  ANALYSIS

### A. Count One of First Supplemental Counterclaims

With respect to Count One of the First Supplemental Counterclaims, Defendants set forth the following allegations in their pleadings:

- "On or around March 15, 2011, the Parties to this lawsuit negotiated and executed an Amended and Restated Agreement of Reorganization (the 'Reorg Agreement,' a true and accurate copy of which is attached as Exhibit 1 to the contemporaneously filed Affidavit in Support of Defendant Apex Energy Solutions of Cincinnati, LLC, Apex Development, Inc., and Shawn McCain's Motion for Temporary Restraining Order and Preliminary Injunction . . . ." (Doc. 30, ¶ 3).

- "Pursuant to a long, detailed series of provisions in the Reorg Agreement, when either the Foit Group or the McCain Group wants to challenge the other party's assertion that it has met the financial requirements of a new market, it should send a 'Challenge Notice.'" (*Id.*, ¶ 4).

- "The party receiving the Challenge Notice therefore has 30 days to engage a 'national auditing firm' to audit its business activity." (*Id.*, ¶ 5).

- "The party receiving the Challenge Notice has 60 days after the 30 days described in Paragraph 5 above to produce the audit results and report to the challenging party." (*Id.*, ¶ 6).

4

- "If the party being challenged fails to meet the requirements set forth in Paragraphs 5 and 6 above, it 'loses' that market, which becomes a market to be developed by the other party."  (*Id.*, ¶ 7).

- "On or around April 13, 2012, the Foit Group sent a notice of its intent to develop Oklahoma City as a market . . . ."  (*Id.*, ¶ 8).

- "On or around June 13, 2012, the McCain Group sent a notice of its intent to challenge the Foit Group's financial compliance in the Oklahoma City market . . . ."  (*Id.*, ¶ 9).

- "The Foit Group wholly failed to respond in any way to the Foit Group's challenge notice . . . ."  (*Id.*, ¶ 10).

- "The Foit Group certainly did not timely carry out its obligations under the Reorg Agreement by engaging a national audit firm to audit the Oklahoma City market within 30 days, or deliver the audit report to the McCain Group within 60 days after that date."  (*Id.*, ¶ 11).

- "Pursuant to the Reorg Agreement, after the Foit Group failed to comply with the Challenge Notice, the Oklahoma City market became a Market to be Developed by the McCain Group."  (*Id.*, ¶ 12).

Plaintiffs move to dismiss Count One on the basis that Defendants' allegations as to the Challenge Notice procedure are inaccurate and a misstatement of the plain language of the Reorganization Agreement, and do not state a plausible claim for relief. (Doc. 83, p. 2).  Defendants contend that the claim should survive because there is ambiguity and vagueness in the Reorganization Agreement with respect to the use of the words "Other Party" in Section 3(d)(vi).  (Doc. 88, pp. 2-3).  Defendants argue that "Other Party" was intended to mean the party that did not send the challenge notice. (*Id.*)

As the Reorganization Agreement is incorporated by reference in Defendants' pleading and is central to Defendants' counterclaims, the Court may consider it here in ruling on the motion to dismiss.  Section 3(d)(vi) of the Reorganization Agreement, which is the provision at issue in Count One, states:

vi. The Other Party may, at any time from the Notice Date until the date occurring 30 days after the expiration of the Development Period (the "Challenge Period"), challenge the Developing Party's 4 Month Notice, Satisfaction Notice or its satisfaction of any of the Designated Market Requirements, or simply inquire into satisfaction of the Developing Party's 4 Month Notice, Satisfaction Notice or its satisfaction of any of the Designated Market Requirements, by providing written notice (the "Challenge Notice") to the Developing Party. Upon delivery of the Challenge Notice, the Other Party shall, within 30 days and at its own expense, engage one of the nationally recognized accounting and auditing firms (the "Independent Auditor"), provided that such Independent Auditor has not provided auditing or accounting services for either party within the previous three years, to evaluate and review the Developing Party's claims that the Designated Market Requirements were satisfied prior to the 4 Month Date or during the Development Period, whichever is applicable.

(Doc. 29 at Ex. 1, § 3(d)(vi)).

When analyzing whether Defendants have stated a plausible claim for relief, the Court must construe the contractual language of the Reorganization Agreement in light of Ohio law, which governs the Reorganization Agreement (*Id.*, § 4(c)). Under Ohio law, "the interpretation of a written instrument is, in the first instance, a matter of law for the court." *Blair v. McDonagh*, 177 Ohio App. 3d 262, 278 (1st Dist. 2008) (citing *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 46 Ohio St. 3d 51, 53 (1989)); *see also Saunders v. Mortensen*, 101 Ohio St. 3d 86, 88 (2004); *Seringetti Constr. Co. v. Cincinnati*, 51 Ohio App. 3d 1, 4 (1st Dist. 1988). If the court is able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract. *Saunders*, 101 Ohio St. 3d at 88 (citing *Aultman*, 46 Ohio St. at 53). Instead, the court must give effect to the contractual language without consideration of parol evidence (*i.e.*, evidence which would contradict or vary the unambiguous terms of the contract). *Rhodes v. Rhodes Indus., Inc.*, 71 Ohio App. 3d 797, 804 (8th Dist. 1991);

*Ameritrust Co. v. Murray*, 20 Ohio App. 3d 333, 335 (8th Dist. 1984).  However, "[w]here a contract is susceptible of two constructions, [the court] must employ the construction that makes the agreement fair and reasonable and gives the agreement meaning and purpose."  *Van Ligten v. Emergency Servs.*, No. 11AP-901, 2012 Ohio App. LEXIS 2620, at *10 (10th Dist. June 29, 2012) (citing *GLIC Real Estate Holdings, LLC v. Bicentennial Plaza Ltd.*, 971 N.E.2d 404, 407 (Ohio 10th Dist. 2012)).

Construing the Reorganization Agreement under Ohio law, the Court finds the language of the Reorganization Agreement is clear and unambiguous such that the intent of the parties can be determined without resort to extrinsic evidence. The first sentence of the provision of the Reorganization Agreement at issue here provides the "Other Party" may send a "Challenge Notice" to the "Developing Party."  (Doc. 29 at Ex. 1, § 3(d)(vi)).  The "Other Party" therefore is the party that is not the Developing Party to whom the Challenge Notice has been sent.  The second sentence of that provision provides that the "Other Party" shall engage one of the nationally recognized accounting firms within 30 days of delivery of the "Challenge Notice." (*Id.*)  Reading that sentence together with the first sentence, the responsibility for engaging the national audit firm was on the "Other Party." (*See id.*)  That construction is supported by the use of the term "Other Party" elsewhere in the Reorganization Agreement where the term is consistently used to refer to the non-Developing Party.  *See, e.g.*, Doc. 29 at Ex. 1, § 3(d)(i) ("A party (the 'Developing Party') seeking to develop into a Market to be Developed and to designate such Market as a New Restricted Market (the 'Designated Market') shall send written notice (a 'Development Notice') by Certified Mail to the principal address of the other party (the 'Other Party') of its intent to designate such

7

Market.");(Doc. 29 at Ex. 1, § 3(d)(viii) (stating that the "Independent Auditor shall be required to deliver to the Other Party and the Developing Party its final determination . . . . within 60 days of its engagement by the Other Party."). As such, the same meaning that is given to term in other parts of the Reorganization Agreement is given to the term in that provision at issue in Count One, and the Reorganization Agreement notably states in two separate provisions that it is the "Other Party" that is to engage the Independent Auditor (Doc. 29 at Ex. 1, §§ 3(d)(vi), 3(d)(vii)). Although Defendants argue (but have not pled in Count One) that the Reorganization Agreement is ambiguous, the existence, or lack thereof, of ambiguity in the contractual language is a matter of law for the Court to decide. *Saunders*, 101 Ohio St. 3d at 88. As such, those arguments may be disregarded in ruling on the motion to dismiss. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286).

The Court now must determine whether Defendants have pled a plausible claim for relief under that clear and unambiguous provision of the Reorganization Agreement. According to Defendants' allegations, Defendants sent a "Challenge Notice" to Plaintiffs regarding the Oklahoma City market that Plaintiffs intended to develop. (Doc. 30, ¶¶ 8-9). Based on that allegation, Defendants were the "Other Party" and Plaintiffs were the "Developing Party" in the context of the provision at issue. As the "Other Party," Defendants had the responsibility of engaging a national auditing firm within 30 days after delivery of the "Challenge Notice." (Doc. 29 at Ex. 1, § 3(d)(vi)). Although Defendants allege that it was Plaintiffs, as the "Developing Party," that had the responsibility for engaging the national audit firm, those allegations directly contradict the unambiguous language of the Reorganization Agreement. (*Id.*) Those allegations

8

therefore are inaccurate factual allegations that the Court declines to accept as true and will disregard. *See Twombly*, 550 U.S. at 555. Accordingly, under the plain and unambiguous language, Defendants, and not Plaintiffs, had the responsibility of engaging the national accounting firm.

Defendants, however, argue in their opposition brief that there was a typographical mistake in reducing the Reorganization Agreement to writing that would have made Plaintiffs, rather than Defendants, responsible for engaging the national accounting firm. Under Ohio law, a mistake may exist where the parties to a contract reach an agreement, but then fail to correctly reduce that agreement to writing. Restatement (Second) of Contracts § 155, cmt. a. This type of mistake is often typographical and generally is referred to as a "scrivener's error." *Id.* Such an error is described as one of mutual mistake. *Castle v. Daniels*, 16 Ohio App. 2d 209 (2d Dist. 1984) (describing a typographical error as a mutual mistake); *Harvey v. Harvey*, 632 N.E.2d 956, 960-61 (Ohio App. 1993) (same); Corbin on Contracts §§ 25.19, 28.45 (describing various typographical errors as mutual mistake). A mistake also can be unilateral where one party recognizes the true effect of an agreement while the other does not. *General Tire, Inc. v. Mehlfeldt*, 118 Ohio App. 3d 109, 115 (9th Dist. 1997). Mistakes may be grounds for rescission or reformation of a contract. *See id.* Mistakes must be proven by clear and convincing evidence. *Harvey*, 91 Ohio App. 3d at 410; *Swartz*, 76 Ohio App. 3d at 50.

When pled in a complaint, allegations of mistake are subject to a heightened standard. Under the Federal Rules of Civil Procedure, the party alleging that such a mistake occurred must plead "with particularity the circumstances constituting . . .

9

mistake." Fed. R. Civ. P. 9(b). *Accord*: Ohio R. Civ. P. 9(b). Here, Defendants have pled no facts and have provided the Court with no documents it may consider at the motion to dismiss stage in their supplemental counterclaim that reference a purported mistake, typographical or otherwise. (*See* Doc. 30. As such, Defendants have failed to satisfy the heightened pleading requirement of Rule 9(b). Moreover, absent any well-pleaded factual allegations, the Court cannot find that Defendants plausibly could prove by clear and convincing evidence that the parties were mistaken regarding the language of the Reorganization Agreement. It also is notable that the Reorganization Agreement has been the subject of multiple rounds of litigation, has been modified several times by competent counsel, and has been found by this Court to contain language that is clear and unambiguously construed as requiring Defendants, as the Other Party, to engage an Independent Auditor. Accordingly, the Court finds that Defendants have not stated a plausible claim for relief against Plaintiffs in Count One of the First Supplemental Counterclaims, and Count One must therefore be dismissed.

### B. Count Two of First Supplemental Counterclaims

Count Two of the First Supplemental Counterclaims is for a declaratory judgment. (Doc. 30, ¶¶ 23-26). Under the federal Declaratory Judgment Act, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act . . . ." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995). The Sixth Circuit has created five factors that courts should consider when making this determination: (1) whether the judgment would

settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004) (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)). In deciding how to balance these factors, district courts must rely on the "unique and substantial" discretion granted to them by the Declaratory Judgment Act. *Scottsdale*, 513 F.3d at 563 (quoting *Winton*, 515 U.S. at 286-88).

Defendants' counterclaim for declaratory relief has two parts. The first part concerns Plaintiffs' purported breach of the Reorganization Agreement by failing to engage a national auditing firm when presented with a Challenge Notice from Defendants as to the Oklahoma City market and the rights that such a breach gives Defendants under the Reorganization Agreement. (*Id.*) As this Court concluded above that Defendants have not stated a plausible claim for relief as to breach of contract by Plaintiffs as to that particular issue because the clear and unambiguous language required Defendants, not Plaintiffs, to engage the national auditing firm, the Court holds here that Defendants also have failed to state a plausible claim for declaratory relief concerning that issue. As such, Count Two of the First Supplemental Counterclaims is dismissed as to declaratory relief concerning the Oklahoma City market.[1]

---

[1] Notably, Defendants argue that Count Two of the First Supplemental Counterclaims "has nothing to do with the Foit Group's failure to initiate or cooperate in the audit of these markets" and instead focuses on the issue of

The second part concerns ten other "Challenged Markets" that Defendants alleged were "abandoned" by Plaintiffs and are now markets to be developed. (*Id.*) With respect to that portion of the second supplemental counterclaim, Defendants allege the following:

- "[O]n June 13, 2012, the McCain Group sent a demand for proof that the Foit Group had not 'abandoned' or 'ceased to do business' in the following markets: (1) Charlotte, NC; (2) Denver, CO; (3) Kansas City, MO; (4) Ft. Wayne, IN; (5) Akron/Canton, OH; (6) Cleveland, OH; (7) Fredericksburg, VA; (8) Washington, DC; (9) Nashville, TN; and (10) Chicago, IL (the 'Challenged Markets')." (*Id.*, ¶ 13).

- "The Foit Group wholly failed to respond to the McCain Group's request for information . . . ." (*Id.*, ¶ 14).

- "Upon information and belief, the McCain Group believes that the Foit Group has ceased to do business in the Challenged Markets." (*Id.*, ¶ 15).

- "Pursuant to the Reorg Agreement, the Challenged Markets are now Markets to be Developed, available to the McCain Group to do business in." (*Id.*, ¶ 16).

Based on those allegations, Defendants seek a declaration that "some of all of the Challenged Markets were 'abandoned' by the Foit Group, and are not Markets to be Developed." (Doc. 30, ¶ 26). Defendants' argument is based on Section 3(e) of the Reorganization Agreement. (Doc. 88, p. 3).

Section 3(e) of the Reorganization Agreement, which is incorporated by reference and is central to Defendants' counterclaim, provides, in pertinent part:

> To the extent that any party "ceases to do business" in any Permanent Exclusive Market, Existing Restricted Market, or New Restricted Market, such Market shall be redesignated as a "Market to be Developed" and the Exclusivity Period applicable to such Market shall no longer apply. If such a Permanent Exclusive Market,

---

abandonment under Section 3(e) of the Reorganization Agreement. (Doc. 88, p. 3). While it is not clear whether Defendants thereby intended to abandon their declaratory judgment claim with respect to the Oklahoma market, the Court finds it unnecessary to address the issue given that Defendants in any event have failed to state a plausible claim for relief on in that regard.

> Existing Restricted Market, or New Restricted Market is redesignated to a Market to be Developed, the previously holding [sic] the Exclusivity Period rights is prohibited from providing a Development Notice for such redesignated Market for a period of 12 months after such Market is redesignated as a Market to be Developed. For purposes of this Agreement, a party is deemed to "cease to do business" in a Market when the party declares bankruptcy, is declared bankrupt or sends a notice of Market withdrawal to the other party (such withdrawal notice to be sent within 30 days of a party's decision to withdraw from a Market). Upon such reversion of a Market, <u>Exhibit C</u> will be amended to reflect such Market reversion.

(Doc. 29 at Ex. 1, § 3(e)).

Although Defendants have not specifically pled the specific reasons that they believe Plaintiffs have ceased to do business in those ten markets (*i.e.*, whether Plaintiffs have declared bankruptcy, have been declared bankrupt, or have sent notice of withdrawal), the Court finds that the allegations construed in favor of Defendants state a plausible claim for declaratory relief as to those ten Challenged Markets. Although Defendants will be required to prove that one of those circumstances for "ceasing to do business" actually occurred in order to obtain the requested declaratory relief, the Court is required here only to test the sufficiency of the pleadings. Accordingly, for the reasons stated above, the Court declines to dismiss Count Two of the First Supplemental Counterclaims as it relates to Plaintiffs' purported abandonment of the ten Challenged Markets listed in paragraph 13 of the First Supplemental Counterclaims.

## C. <u>Count Three of the First Supplemental Counterclaims</u>

Count Three of the First Supplemental Counterclaims concerns Plaintiffs' purported breach of a settlement agreement reached earlier in this litigation. (Doc. 30, ¶¶ 27-29). In Defendants' opposition brief, they agree that dismissal of this counterclaim is appropriate. (Doc. 88, p. 3). As such, Count Three of the First

Supplemental Counterclaims is dismissed.

### D. **Count One of the Second Supplemental Counterclaims**

In Count One of the Second Supplemental Counterclaims, Defendants assert a claim for breach of contract against Plaintiffs. (Doc. 44, ¶¶ 18-22). However, there are two separate and distinct bases for that breach of contract claim. The Court will address the two bases separately below.

#### 1. **Atlanta, Houston and Phoenix Markets**

The first basis for the breach of contract claim relates to Plaintiffs' action or inaction with respect to the Atlanta, Houston and Phoenix markets. Specifically, Defendants allege the following:

- "On or around May 7, 2012, Paul Lewis sent Mr. McCain a letter stating the Foit Group's designation of Atlanta, Houston, and Phoenix as Markets to be Developed." (Doc. 44, ¶ 15).

- "The Foit Group therefore had 4 months (up to and including September 7, 2012) to send their '4 Month Notice' – via certified mail – to the McCain Group, stating that they had fulfilled their 4 month obligations in those cities. They failed to send any such notice in any way, certainly not in a certified letter." (*Id.*, ¶ 16).

Since the May 7, 2012 letter (the "May Letter") has been placed in evidence with respect to other claims asserted previously in this matter, is incorporated by reference in Count One and is central to Defendants' counterclaim, the Court will consider it here. The May Letter signed by Paul Lewis for Plaintiffs provides, in pertinent part:

> Dear Shawn:
>
> I write regarding the Atlanta, Phoenix, and Houston Markets.
>
> On November 15, 2011, you designated the Phoenix and Houston Markets as New Markets as that term is defined in the Agreement of Reorganization dated March 15, 2011 (the "Agreement"). Similarly, on December 5, 2011, you designated the Atlanta market as a New Market. As you are well aware, the

Agreement, which was in effect on the date of both letters, requires that a party who has designated a market as a New Restricted Market send a written notice by certified mail to the other party certifying that he has satisfied the Capital Commitment Requirement and the Manufacturer Credit Line Requirement for the specific Designated Market on or prior to the applicable 4 Month Date.

If the 4 Month Notice is not given more than five days after the 4 Month Date, or if it is not given at all, then the Agreement provides that the market shall be re-designated as a Market to be Developed, and that the party who failed to give the 4 Month Notice is prohibited from providing a development notice for such market for 12 months after the 4 Month Date.

Please allow this letter to serve as formal notice that you have failed to timely provide a 4 Month Notice in accordance with the Agreement.  As such, the Atlanta, Phoenix, and Houston Markets have now automatically been re-designated as Markets to be Developed, and you are prohibited from providing a development notice for such markets for 12 months after the 4 Month Date. Accordingly, the Foit Group retains all of their rights to these markets, including the right to designate any one or all of them as New Markets. . . .

(Doc. 83-1).

The above factual allegations relate to the parties' rights and responsibilities under Section 3(d) of the Reorganization Agreement, a provision with which the Court is intimately familiar and has reviewed and interpreted multiple times throughout this litigation.  As the Reorganization Agreement is incorporated by reference and is central to Defendants' counterclaim, the Court will consider it here.  Section 3(d) provides, in pertinent part:

Either the Foit Group or the McCain Group or their respective affiliates, may develop any Market which is not competitive with a Permanent Exclusive Market, an Existing Restricted Market or a New Restricted Markets [sic] (each, a "Market to be Developed").  Either party may develop a Market to be Developed and convert the designation of Market to a "New Restricted Market" by satisfying the steps set forth below:

[i.]  A party (the "Developing Party") seeking to develop into a

15

Market to be Developed and to designate such Market as a New Restricted Market (the "Designated Market") shall send written notice (a "Development Notice") by Certified Mail to the principal address of the other party (the "Other Party") of its intent to designate such Market. The Development Notice must in the form of the letter attached as <u>Exhibit D</u>. The date of the Development Notice (the "Notice Date") shall be deemed the date of receipt by the Other Party, as evidenced by the delivery receipt. The Developing Party shall have twelve months after the Notice Date (the "Development Period") to complete the requirements set forth herein to convert the Designated Market to a New Restricted Market for the Developing Party.

ii. On or prior to the date occurring four months after the Notice Date (the "4 Month Date"), the Developing Party must have obtained [certain capital funds] for use in developing the Designated Market . . . .

iii. Within five days after the 4 Month Date, the Developing Party shall send written notice (a "4 Month Notice") by Certified Mail to the principal address of the Other Party certifying that the Developing Party has satisfied the [specific requirements] for a specific Designated Market on or prior to the applicable 4 Month Date. The date of the 4 Month Notice (the "4 Month Notice Date") shall be deemed the date of receipt by the Other Party, as evidenced by the delivery receipt. If the 4 Month Notice Date is more than five days after the 4 Month Date, or is no 4 Month Notice is timely delivered with respect to a Designated Market, it shall be deemed a failure by the Developing Party to satisfy the Designated Market Conditions and such a Designated Market will be redesignated as a Market to be Developed and the Developing Party is prohibited from providing a Development Notice for such former Designated Market for a period of 12 months after the 4 Month Date.

(Doc. 29 at Ex. 1, § 3(d)).

Based on the allegations and the contractual language, there are two issues to consider in ruling on the motion to dismiss: (1) whether the May Letter was plausibly a Development Notice for the Atlanta, Houston and Phoenix markets; and (2) whether Plaintiffs plausibly failed to satisfy their 4 Month Notice obligations for those three

markets.

Starting with the first issue, the Court finds that it is not plausible that the May Letter was a Development Notice for the Atlanta, Houston and Phoenix markets. First and foremost, the May Letter is not in the form of Exhibit D to the Reorganization Agreement, which any Development Notice must be under the plain language of the Reorganization Agreement, and it does not contain any of the language or attributes of Exhibit D. (*See* Doc. 29 at Ex. 1, p. 11). Second, nowhere in the May Letter does it indicate that the Atlanta, Houston or Phoenix market is being designated by Plaintiffs as a New Restricted Market, New Market, or Designated Market so as to plausibly suggest the May Letter was intended as a Development Notice. (*See* Doc. 83-1; Doc. 29 at Ex. 1, § 3(d)). Rather, as Defendants have stated in their pleadings (Doc. 44, ¶ 15), the May Letter states that those three markets are re-designated pursuant to the Reorganization Agreement due to Defendants' failure to satisfy the 4 Month Notice Requirements as a "Market to be Developed" in accord with Section 3(d)(iii) of the Reorganization Agreement. (Doc. 44, ¶ 15).

That leads the Court to the second issue of whether Plaintiffs plausibly failed to satisfy their obligations to provide a 4 Month Notice with respect to those three markets. Under the Reorganization Agreement, a party only is subject to the 4 Month Notice requirement when it sends a Development Notice. (Doc. 29 at Ex. 1, § 3(d)). As explained previously, Defendants have not plausibly alleged that Plaintiffs sent a Development Notice for those three markets (Atlanta, Houston or Phoenix). As such, Plaintiffs did not have any 4 Month Notice obligations under the Reorganization Agreement with respect to those three markets. Plaintiffs therefore could not plausibly

have breached the Reorganization Agreement by failing to send a 4 Month Notice for those markets.

Nevertheless, even assuming Plaintiffs had been required under the Reorganization Agreement to send a 4 Month Notice with respect to those three markets and Plaintiffs failed to do so, Defendants still would not have stated a plausible claim for breach of contract. Instead, Defendants would have alleged only that Plaintiffs failed to fulfill a condition to a contract, which does not constitute a breach of contract. *Morrison v. Bare*, No. 23667, 2007 Ohio App. LEXIS 5955, at *11-12 (9th Dist. Dec. 19, 2007) ("While the failure to perform a promise is a breach of contract, the failure to satisfy a condition is not.") (citing Corbin on Contracts, § 30.12). The condition that Plaintiffs would have failed to satisfy would be sending the 4 Month Notice. When that condition is not satisfied, the Reorganization Agreement expressly provides the market for which the 4 Month Notice is not timely sent shall be re-designated as a "Market to be Developed" and the Developing Party that failed to satisfy the 4 Month Notice requirement shall be prohibited from "providing a Development Notice for such former Designated Market for a period of 12 months after the 4 Month Date" during which time the other party has the opportunity to designate that market if it chooses to do so. (Doc. 29 at Ex. 1, § 3(d)). To state a plausible claim for breach of contract, Defendants would have had to allege, for example, that even though Plaintiffs had failed to satisfy the condition and no longer had a contractual right to develop in that market, they nevertheless continued to exclude Defendants from that market. Defendants have not made such allegations (or any similar allegations). (*See* Doc. 44).

For the foregoing reasons, the Court concludes that to the extent Count One of

the Second Supplemental Counterclaims is based on Plaintiffs' actions or inactions with respect to the Atlanta, Houston, or Phoenix markets, Defendants have failed to state a claim upon which relief can be granted and that portion of Count One is dismissed.

### 2.  <u>The Cleveland Market</u>

With respect to the second part of Count One of the Second Supplemental Counterclaims, Defendants plead the following:

- "The Foit Group has wholly failed to meet their Notice requirements for the Cleveland market.  The Reorg Agreement, Section 3(d)(xi), allows the Foit Group to have until July 31, 2012 – specifically stated as the Development Period for that market – to satisfy the Designated Market Requirements by sending notice of meeting the financial obligations via certified mail.  They sent no such notice of satisfying the financial obligations of that market whatsoever, certainly not in a certified letter."  (Doc. 44 , ¶ 14).

Section 3(d)(xi) of the Reorganization referred to by Defendants in its factual allegation provides:

> xi.  Notwithstanding anything else contained in this Agreement, the Foit Group shall have until July 31, 2012 (*i.e.*, the Development Period for the Cleveland, Ohio Market) to satisfy the Designated Market Requirements in the Designated Market identified as Cleveland, Ohio.

(Doc. 29 at Ex. 1, § 3(d)(xi)).  Similar to the portion of Count One relating to the Atlanta, Houston and Phoenix markets, this portion of Count One relates to whether Plaintiffs provided the requisite 4 Month Notice for the Cleveland market.

As explained above with respect to the Atlanta, Houston and Phoenix markets, Defendants' allegation does nothing more than show that Plaintiffs failed to satisfy a condition (*i.e.*, the 4 Month Notice) of the Reorganization Agreement.  The failure to satisfy a condition does not constitute a breach of contract.  *Morrison*, 2007 Ohio App. LEXIS 5955, at *11-12 (citing Corbin on Contracts, § 30.12).  Defendants make no

allegations that suggest or plausibly could be construed to suggest that Plaintiffs took any actions beyond failing to satisfy the condition, such as denying that they failed to satisfy the condition or continuing to exclude Defendants from those markets even though the condition had not been satisfied and Plaintiffs no longer had a contractual right to develop in that market.  Absent such allegations, the Court cannot find that Defendants have stated a plausible claim for relief as to Count One of the Second Supplemental Counterclaims as it relates to the Cleveland market.  Therefore, that portion of Count One is dismissed.

### E.  Count Two of the Second Supplemental Counterclaims

In Count Two of the Second Supplemental Counterclaims, Defendants seek a declaratory judgment that Plaintiffs (specifically, the Foit Group) materially breached the Reorganization Agreement by failing to send the requisite notices for the Cleveland, Houston, Atlanta, and Phoenix markets, that Plaintiffs can no longer conduct business in those markets, and that Defendants may now enter those markets.  (Doc. 44, ¶¶ 25-27).

The same standard for declaratory relief under the federal Declaratory Judgement Act that was applied as to Count Two of the First Supplemental Counterclaims also applies here.  In this case, Defendants have stated, in part, a plausible claim for relief under the Declaratory Judgment Act, which the Court will entertain.  For the reasons explained above with respect to Count One of the Second Supplemental Counterclaims, it is not plausible that Defendants could be granted the relief of a declaration with respect to Plaintiffs materially breaching the Reorganization Agreement by failing to send the 4 Month Notices.  Nevertheless, if Plaintiffs indeed

failed to satisfy the 4 Month Notice requirements of the Reorganization Agreement as Defendants have alleged, then there are certain contractual consequences flowing from Plaintiffs' inaction that the Court plausibly could resolve by a declaration as to the rights and other legal relations of the parties. As such, Count Two of the Second Supplemental Counterclaims is dismissed only as to the issue of Plaintiffs' "material breach" of the Reorganization Agreement. The remainder of Count Two remains pending.

### F. Count Three of the Second Supplemental Counterclaims

In Count Three of the Second Supplemental Counterclaims, Defendants assert a claim for unjust enrichment. (Doc. 44, ¶¶ 29-33). That claim is based solely upon the purported material breaches of Plaintiffs with respect to the Cleveland, Houston, Atlanta and Phoenix markets. (*Id.*)

As the Court already has found that Defendants have failed to state a plausible claim for breach of contract against Plaintiffs relating to the Cleveland, Houston, Atlanta and Phoenix markets asserted in the Second Supplemental Counterclaims, this claim based on those breaches must also be dismissed. Moreover, Defendants have pled that the Reorganization Agreement is a valid and binding contract, and Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject, *Harwood v. Avaya Corp.*, No. C2-05-828, 2007 U.S. Dist. LEXIS 38722 at *33 (S.D. Ohio May 25, 2007) (citing *Univ. Hosp. of Cleveland, Inc. v. Lynch*, 96 Ohio St. 3d 118 130 (2002)); *Thomas & Markers Constr., Co. v. Wal-Mart Stores, Inc.*, No. 3:06-cv-406, 2008 U.S. Dist. LEXIS 79072, at *58 (S.D. Ohio Sept. 15, 2008) (citing *Aultman*, 46 Ohio St. 3d at 55; *Weiper v. W.A. Hill & Assocs.*, 104 Ohio

App. 3d 250, 262 (1st Dist. 1995)). Accordingly, Count Three of the Supplemental Counterclaims is dismissed in its entirety.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to dismiss (Doc. 83) is **GRANTED IN PART** and **DENIED IN PART**.  It is **ORDERED** that:

1. Count One of the First Supplemental Counterclaims (Doc. 30, ¶¶ 19-22) is DISMISSED in its entirety.

2. Count Two of the First Supplemental Counterclaims (Doc. 30, ¶¶ 23-26) is DISMISSED as to the request for declaratory relief based upon the same facts asserted in Count One regarding the national auditing firm for the Oklahoma City market, but REMAINS PENDING as to the "abandonment" claim.

3. Count Three of the First Supplemental Counterclaims (Doc. 30, ¶¶ 27-29) is DISMISSED in its entirety.

4. Count One of the Second Supplemental Counterclaims (Doc. 44, ¶¶ 14-16) is DISMISSED in its entirety.

5. Count Two of the Supplemental Counterclaims (Doc. 44, ¶¶ 25-27) is DISMISSED as to the issue of Plaintiffs' purported material breach of the Reorganization Agreement for allegedly failing to send 4 Month Notices for the Cleveland, Houston, Atlanta, and Phoenix markets, but REMAINS PENDING as to all other issues asserted in Count Two.

6. Count Three of the Supplemental Counterclaims (Doc. 44, ¶¶ 29-33) is DISMISSED in its entirety.

22

**IT IS SO ORDERED.**

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court