UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

APEX ENERGY GROUP, LLC, et al.,          Case No: 1:12-cv-466

      Plaintiffs,          Judge Michael R. Barrett

v.

APEX ENERGY SOLUTIONS OF
CINCINNATI LLC, et al.,

      Defendants.

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment on Defendants' Remaining Supplemental Counterclaim. (Doc. 138). Defendants have filed a response in opposition (Doc. 139), and Plaintiffs have filed a reply (Doc. 140). This matter is now ripe for review.

**I.**     **BACKGROUND**

On numerous occasions, the Court has set forth the relevant factual background of this case. It need not be repeated again here. Suffice it to say that there is only one supplemental counterclaim of Defendants that remains pending, which is Count II of Defendants' First Supplemental Counterclaims as to the request for declaratory relief on the abandonment claim (Doc. 30).

Plaintiffs have moved for the second time for summary judgment on this counterclaim.[1] As they did in response to the first motion for summary judgment, Defendants oppose summary

---

[1] Plaintiffs initially moved for summary judgment on this counterclaim, which the Court denied on September 30, 2013 subject to re-filing after the limited discovery that was authorized by the Court on February 25, 2013 was complete. (Doc. 135). Despite the Court's instruction to do so, the parties never tendered a proposed calendar order containing a discovery cutoff date for the limited discovery on the counterclaim. At the time Plaintiffs filed the motion for summary judgment, approximately 9 months had passed since the Court first authorized the limited discovery.

1

judgment as to this counterclaim by arguing that they need more discovery. Plaintiffs disagree and argue that summary judgment is appropriate.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 474 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 24-49. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential of that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.    ANALYSIS

Defendants' abandonment counterclaim is governed by the language of the Reorganization Agreement that has been central to the lawsuit between the parties. In pertinent part, the Reorganization Agreement provides:

> To the extent that any party "ceases to do business" in any Permanent Exclusive Market, Existing Restricted Market, or New Restricted Market, such Market shall be redesignated as a "Market to be Developed" and the Exclusivity Period applicable to such Market shall no longer apply. . . . For purposes of this Agreement, a party is deemed to "cease to do business" in a Market when the party declares bankruptcy, is declared bankrupt or sends a notice of Market withdrawal to the other party (such withdrawal notice to be sent within 30 days of a party's decision to withdraw from a Market).

(Doc. 81-1, § 3(e)). When a Market is redesignated as a "Market to be Developed," the party previously holding the rights to the Market is prohibited from providing a Development Notice for such redesignated Market for a period of 12 months after the Market is redesignated as a Market to be Developed. (Id.) Under the Reorganization Agreement, a Market consists of the "city designated as such market and areas within a 75-mile radius of the center of such city." (Id., § 3(f)).

In this case, Defendants do not advance any argument that reasonably may be construed as challenging whether Plaintiffs have "ceased to do business" in any Market by reason of declaring bankruptcy or by being declared bankrupt. The only remaining issue is whether Plaintiffs have sent notice of Market withdrawal within thirty days of a decision to withdraw from a Market. The Markets at issue include: 1) Charlotte, North Carolina; 2) Denver, Colorado; 3) Kansas City, Missouri; 4) Ft. Wayne, Indiana; 5) Fredericksburg, Virginia; 6) Washington D.C.; 7) Nashville, Tennessee; 8) Chicago, Illinois; 9) Cleveland, Ohio, and 10) Akron/Canton, Ohio.

Defendants do not set forth any argument or evidence that even remotely suggests that Plaintiffs have sent a notice of Market withdrawal to Plaintiffs for any of the ten markets

3

identified above so as to satisfy the "cease to do business" requirement of the Reorganization Agreement. Instead, Defendants appear to contend that Plaintiffs have made a decision to withdraw from the above-identified Markets but have failed to send the requisite withdrawal notice within thirty days of making that decision.

In analyzing the issue, the Court will consider the first eight markets jointly and will consider the Cleveland and Akron/Canton markets separately.

A. **Markets 1 through 8**

Having reviewed the parties' arguments and evidence, the Court finds Plaintiffs' motion to be well taken with respect to the first eight markets at issue. Plaintiffs have set forth affirmative evidence that shows they obtained sales contracts in each of the eight markets in most months of the year 2013. (Doc. 138-1). Those sales contracts have been authenticated by the affidavit of Paul Lewis. (Doc. 138-1, ¶ 7). In his affidavit, Lewis also provides a sworn statement that Plaintiffs have not sent a notice of market withdraw for any of the eight markets at issue. (Doc. 138-1, ¶ 5). Moreover, Plaintiffs have provided an authenticated letter from Alside, its window supplier, indicating that Plaintiffs have had substantial window sales in Charlotte, Chicago, Denver, Ft. Wayne, Kansas City, Nashville, and Washington D.C. throughout 2013. (Doc. 140-1). That evidence satisfies Plaintiffs' burden of production.

Defendants have not satisfied their reciprocal burden of producing significant probative evidence in support of their counterclaim to create a genuine issue of material fact. The only evidence set forth by Defendants in opposition to summary judgment are the affidavit of Defendants' counsel attesting to a request made to Foit and Lewis to bring "job contracts" to their depositions as well as Foit's and Lewis' failure to do so, and an unauthenticated printout of a document that purportedly is Apex Energy Group's "Contact Us" page. (Doc. 139-1; Doc. 139-

4

2). The affidavit of Defendants' counsel does not address any of the specific facts at issue in this case and therefore cannot create a genuine issue of material fact. As for the unauthenticated website printout, it cannot be considered in ruling upon summary judgment as it is not admissible. Fed. R. Civ. P. 56(c)(1)(2); Fed. R. Evid. 901(a); *see also United States v. Martedis McPhearson*, 303 F. App'x 310, 318 (6th Cir. 2008) (recognizing that authentication is a necessary precondition to admissibility); *Blue Group Res., Inc. v. Energy*, No. 2:11-cv-648, 2013 U.S. Dist. LEXIS 102081, at *12 (S.D. Ohio July 22, 2013) (declining to consider evidence on summary judgment that was not properly authenticated).[2]

Defendants' additional argument that the Fredericksburg, Virginia and Washington D.C. markets do not constitute the same Market under the Reorganization Agreement is unavailing. Defendants concede that Fredericksburg, Virginia and Washington D.C. are only 50 miles from each other. As such, they fall within the same Market under the Reorganization Agreement provision that defines the Market as the "city designated as such market and areas within a 75-mile radius of the center of such city." (Doc. 81-1, § 3(f)). Further, even if they did not constitute the same market, each of the sales contracts produced by Plaintiffs for the areas fall within 75 miles of both the Fredericksburg, Virginia and Washington D.C. markets such that they constitute evidence that Plaintiffs are doing business in both markets. (*See* Doc. 138-1, at 21-30).

Yet, Defendants' failure to produce significant probative evidence of a genuine issue of material fact does not end the analysis. Given Defendants' argument that Plaintiffs' motion is

---

[2] Even if the Court considered the website, it would not find a genuine issue of material fact created thereby. The website purports to list the business offices for Apex Energy Group; it does not purport to list all of the locations in which Apex Energy Group does business. (Doc. 139-2). Nothing in the Reorganization Agreement requires that Apex Energy Group have a business office in each city in which it continues to do business.

premature, the Court must consider whether Fed. R. Civ. P. 56(d) is applicable. Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Here, Defendants present the affidavit of counsel that explains that Plaintiffs did not bring the "job contracts" to the depositions of Foit and Lewis as requested. (Doc. 139-1, ¶ 2). Defendants' counsel avers that Defendants should be able to obtain all of the "job contracts" for the relevant markets, which would evidence the sales in each of the markets and would be informative as to whether the Foit Group had abandoned the listed markets. (Doc. 139-1, ¶ 2). Although not included in counsel's affidavit, Defendants argue that they need all of those contracts to oppose summary judgment because they cannot rely on the accuracy of those contracts attached by Plaintiffs to the motion for summary judgment.

Having reviewed the positions of the parties and the documents submitted, the Court is not persuaded that Rule 56(d) precludes the resolution of the remaining counterclaim on summary judgment. First, Defendants have not shown that they diligently sought to obtain the discovery requested so as to be precluded from presenting facts essential to justify their opposition. To put the discovery issue in context, the Court granted Defendants leave to file, at a late stage in the proceedings, their supplemental counterclaims. (Doc. 75). The Court held a jury trial on other claims, but not the supplemental counterclaims, in February 2013. On February 20, 2013, Plaintiffs filed a motion for summary judgment on Defendants' supplemental counterclaims. (Doc. 114). On February 25, 2013, following the jury trial, the Court held a status conference with the parties in which it indicated that it would permit limited discovery on

the supplemental counterclaims. On September 30, 2013, the Court denied the motion for summary judgment on the abandonment claim subject to re-filing, noting that the Court had advised the parties to submit a proposed calendar order providing a discovery cutoff date, which had not been tendered to the Court, and that the limited discovery needed to be conducted before it would consider the summary judgment motion. (Doc. 135). Despite that admonishment, the parties never have submitted a calendar order to the Court providing a discovery cutoff date, and each party accuses the other of failure to cooperate. In the meantime, the depositions of Plaintiffs Lewis and Foit were taken by Defendants at which Defendants claim that Lewis and Foit failed to produce the requested "job contracts." Although the parties subsequently contacted the Court regarding a deposition dispute concerning trade secrets and licensing agreements, no discovery issue has previously been raised to the Court about the failure to produce job contracts in response to proper discovery requests. Nor has evidence been presented that any interrogatories or requests for the production of documents related to the job contracts were ever submitted to Plaintiffs in an attempt to obtain the job contracts or that other diligent efforts to obtain any related discovery were made.

Second, Defendants' attacks on the sufficiency of the evidence attached to Plaintiffs' briefings do not demonstrate that additional discovery is necessary to justify Defendants' opposition. Although Defendants claim that the documents produced by Plaintiffs are, in their view, unauthentic, Plaintiffs have authenticated the job contracts they produced as true and accurate business records through the affidavit of Lewis. Defendants' speculative allegations that the business records are inaccurate do not render them so. Redacting customers' names and addresses does not negate the authentication of the records.[3]

---

[3] Defendants' counsel does not attest under Fed. R. Civ. P. 56(d) that the records may be inaccurate reflections of sales or to any reasons why the records may be inaccurate in that regard. Moreover, no evidence has been presented

7

Nor is the Court persuaded by Defendants' argument that they need to obtain all of the contracts because Plaintiffs have attached less than the number provided for by the franchise agreements. Putting aside the fact that obtaining *more* evidence of Plaintiffs' ongoing business in the eight markets would not support Defendants' position of abandonment, Defendants merely speculate "upon information and belief" that Plaintiffs have more contracts to produce because the franchise agreements require a certain number of job contracts. To the extent that Defendants attempt to discover whether Plaintiffs obtained the requisite number of job contracts under the franchise agreements, that evidence is immaterial. Indeed, Defendants admit that obtainment of a smaller number of job contracts than provided for in the franchise agreements would not indicate an "abandonment" of the market. Obtaining evidence that would not create a genuine issue of material fact does not justify continuation of the discovery period.[4]

Defendants' additional contention that the job contracts relied upon by Plaintiffs do not reflect "actual sales" in the market does not demonstrate the need for additional discovery to justify Defendants' opposition. Contradictorily, Defendants take the position that Plaintiffs cannot rely on the job contracts to demonstrate a lack of abandonment, while in the same breath contending that the job contracts are essential to justify Defendants' opposition because they show whether Plaintiffs abandoned the market. Stated differently, Defendants insist that Plaintiffs produce evidence of "actual sales" instead of the job contracts to demonstrate a lack of abandonment while arguing that Defendants may be able to show abandonment only by obtaining the job contracts they seek. Yet, if the actual sales receipts were the critical documents

---

that Defendants ever have made discovery requests (e.g., interrogatories) aimed specifically at discovering the identity of the customers with whom Plaintiffs do business in those markets or that Defendants have diligently attempted to otherwise obtain such information so as to justify the continuation of discovery for that purpose.

[4] Although Defendants state in the opposition brief that Plaintiffs "tricked" ex-partners in two major cities into entering into franchise agreements with them, they do so without any reference to an affidavit or other evidence and they indicate that issue is being brought in a separate complaint.

in this case, then Defendants should be seeking those actual sales receipts rather than relying on the job contracts. They are not.

In any event, the Court does not find that information about actual sales is necessary for Plaintiffs to obtain summary judgment on the abandonment counterclaim. The Reorganization Agreement does not require Plaintiffs to obtain any particular amount of sales to avoid "ceasing to do business." Instead, the Reorganization Agreement provides only for notice to be sent by Plaintiffs after Plaintiffs decide to withdraw from a Market. The evidence produced that shows Plaintiffs entered into contracts in those Markets, and the evidence of its window supplier confirming that Plaintiffs were doing business in the markets, indicate Plaintiffs intended to operate in those Markets. Even if Plaintiffs were not paid by each and every customer with whom they entered a contract, the evidence set forth by Plaintiffs still is sufficient to show that Plaintiffs have not made the decision to "cease to do business" under the terms of the Reorganization Agreement. The actual sales of Plaintiffs thus are immaterial to the counterclaim.[5]

Therefore, in light of the above analysis, the Court finds that additional discovery on Rule56(d) is not warranted, and that summary judgment in favor of Plaintiffs on the remaining counterclaim for these eight markets is appropriate.

### B. Cleveland Market

Plaintiffs argue that the Court already has declared the parties' rights with respect to that market such that the counterclaim is moot in that respect. Defendants do not oppose Plaintiffs' argument as to the Cleveland market. Accordingly, the Court concludes that the abandonment counterclaim is moot as to the Cleveland market.

---

[5] The Court further notes that attempting to obtain actual sales data from Plaintiffs may be a fishing expedition on the part of Defendants, who have a hostile competitive relationship with Plaintiffs, with whom they used to be in business.

9

### C. Akron/Canton Market

Plaintiffs further concede that they are not operating in the Akron/Canton market because they never sent the requisite four-month notice on or before March 10, 2011 such that the market automatically reverted to a Market to be Developed in accordance with Section 3(d)(iii) of the Reorganization Agreement.[6]  A Development Notice thus could not be issued by Plaintiffs for that market for a twelve-month period following the four-month date.  Defendants do not oppose Plaintiffs' argument as to the Akron/Canton market.

Accordingly, the Court concludes that there are no genuine issues of material fact as to this claim, and the Akron/Canton market became a Market to Be Developed on March 10, 2011 and Plaintiffs were precluded from issuing a Development Notice for the Akron/Canton market for a twelve-month period up to and including March 10, 2012.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment on Defendants' Supplemental Counterclaim (Doc. 138) is **GRANTED**.  It is hereby **ORDERED** and **DECLARED** that:

(1) The Akron/Canton market is a Market to be Developed pursuant to the terms of the Reorganization Agreement, and Plaintiffs were prohibited from issuing a Development Notice for that market from March 20, 2011 through March 10, 2012.

(2) The remainder of Count II of Defendants' First Supplemental Counterclaims is hereby dismissed with prejudice.

---

[6] Section 3(d) provides that a notice must be sent within four months after the notice date that indicates certain requirements have been satisfied for that market.  If the four-month notice is note sent, the market is redesignated as a Market to be Developed and the party that had the burden of sending the four-month notice is prohibited from providing a Development Notice for that market for a period of 12 months after the four-month date.  (Doc. 81-1, § 3(d)(ii)-(iii)).

(3) As no claims or counterclaims remain pending, this matter is hereby CLOSED and TERMINATED from the docket of this Court.

**IT IS SO ORDERED.**

                                                  s/Michael R. Barrett
                                                  JUDGE MICHAEL R. BARRETT
                                                  UNITED STATES DISTRICT COURT